**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

:
**UMG RECORDINGS, INC., et al.,** :
     **Plaintiffs,** :
   **v.** :     **CIVIL NO. 07-3705**
:
**JOSEPH ALBURGER,** :
     **Defendant.** :
:

<u>**MEMORANDUM OPINION AND ORDER**</u>

**RUFE, J.**                                                        **September 29th, 2009**

           This is a copyright infringement action in which Plaintiffs ask for damages as a result of Defendant's alleged unauthorized use of Plaintiffs' sound recordings. Presently before the Court is Plaintiffs' Motion for Summary Judgment,[1] seeking a determination that Defendant violated 17 U.S.C. § 106(1) and (3), and that Plaintiffs are entitled to damages under 17 U.S.C. §§ 502 and 504(c). Jurisdiction is proper for this action and is not disputed by Defendant. Upon consideration of Plaintiffs' Complaint,[2] Defendant's Answer,[3] and Plaintiffs' Memorandum regarding the instant Motion with attached Exhibits,[4] Plaintiffs' Motion for Summary Judgment is **GRANTED**. The Court finds as a matter of law that Defendant infringed Plaintiffs' copyright, and that Plaintiffs are in fact entitled to the damages requested.

---

[1] Doc. No. 18.

[2] Doc. No. 1.

[3] Doc. No. 5.

[4] Doc. No. 19.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs UMG Recordings, Inc., BMG Music, Interscope Records, and Arista Records LLC are entities that own or license exclusive rights to copyrighted sound recordings.[5] Although they allege that Defendant was illegally distributing 563 digital audio files, they pursued copyright violations for twenty-five (25) registered sound recordings ("Recordings") which appear below.  Plaintiffs maintain that at the time of Defendant's discovered violation, they held effective copyright registration on the Recordings.[6]   Plaintiffs contend that they have properly affixed copyright notices to the album covers of the CDs containing the Recordings pursuant to 17 U.S.C. § 401,[7] and they add that they did not give consent for Defendant to copy, download, or distribute the Recordings.[8]

| Copyright Owner/Licensee | Artist name | Album name | Song name | SR# |
|---|---|---|---|---|
| UMG Recordings, Inc. | DMX | Flesh of My Flesh, Blood of My Blood | Slippin' | 188-987 |
| BMG Music | Busta Rhymes | Genesis | Break Ya Neck | 312-547 |
| UMG Recordings, Inc. | Ludacris | Rollout (single) | Rollout | 303-066 |
| Interscope | Eminem | The Marshall Mathers LP | Amityville | 287-944 |
| Arista Recordings LLC | Outkast | Aquemini | Da Art of Storytellin' | 264-092 |
| UMG Recordings, Inc. | 50 Cent | In Da Club (single) | Back Down | 323-562 |
| Interscope Records | Eminem | Eminem Show | Square Dance | 317-924 |

---

[5] Compl. ¶ 10.

[6] Pls.' Mem. of Law in Supp. of their Mot. for Summ. J. [Doc. No. 19] ¶  21.

[7] Id. ¶  15-16.

[8] Id. ¶ 23.

| UMG Recordings, Inc. | 50 Cent | Get Rich or Die Tryin' | Life's on the Line | 337-801 |
|---|---|---|---|---|
| UMG Recordings, Inc. | G-Unit | Stunt 101 (single) | Stunt 101 | 343-122 |
| UMG Recordings, Inc. | G-Unit | Beg For Mercy | Gangsta Shit | 337-759 |
| UMG Recordings, Inc. | Lloyd Banks | On Fire (single) | On Fire | 354-450 |
| BMG Music | Mobb Deep | The Infamous | Survival of the Fittest | 209-806 |
| Interscope Records | Eminem | The Marshall Mathers LP | Marshall Mathers | 287-944 |
| UMG Recordings, Inc. | Ja Rule | Venni Vetti Vecci | Story to Tell | 174-722 |
| UMG Recordings, Inc. | DMX | It's Dark and Hell is Hot | Stop Being Greedy | 252-613 |
| Interscope Records | Eminem | The Slim Shady LP | As the World Turns | 262-686 |
| Interscope Records | Eminem | Just Don't Give a Fuck (single) | Brain Damage | 250-999 |
| UMG Recordings, Inc. | Method Man feat. D'Angelo | Tical 2000: Judgement Day | Break Ups 2 Make Ups | 246-145 |
| UMG Recordings, Inc. | Ludacris | Stand Up (single) | Stand Up | 340-556 |
| UMG Recordings, Inc. | Nelly feat. Murphy Lee | Nellyville | Air Force Ones | 315-537 |
| BMG Music | Usher | Confessions | Yeah | 354-784 |
| UMG Recordings, Inc. | DMX | ...And Then There Was X | Here We Go Again | 279-017 |
| UMG Recordings, Inc. | Ludacris | Back For the First Time | Southern Hospitality | 289-433 |
| UMG Recordings, Inc. | Ludacris | Word of Mouf | Saturday (Oooh! Oooh!) | 304-605 |
| Arista Records LLC | Clipse | Lord Willin' | Virginia | 321-673 |

Plaintiffs have been concerned about the problem of digital piracy for over a decade.[9]

As a result, they enlist a third party service, MediaSentry, to detect possible copyright violations,

---

[9]Id. at 2.

particularly with respect to online file sharing programs.[10]  Many of these violations occur using peer-to-peer ("P2P") networks in which individual Internet users can search for, download, and share digital music files with other users.[11]  The P2P network allegedly accessed in this case is KaZaA.[12] Plaintiffs explain that in order to locate a P2P user, one needs to capture his or her unique Internet Protocol ("IP") address, which is associated with the computer that is making the files available online.[13]

On September 6, 2004, MediaSentry detected an Internet user distributing 563 music files, including the Recordings, through an account on the KaZaA network at IP address 172.144.76.52.[14]  The network username associated with the account was "TEMPTME@KaZaA."[15] Other users signed onto KaZaA could view and download the files from the user's "shared" folder because KaZaA runs a Fasttrack P2P sharing network on its software.[16]  When MediaSentry detected this activity, it began downloading the data in the "shared" folder to determine whether the files were audio files; it downloaded six (6) completely, all of which are included in the Recordings list above.[17]  Next, on that same date of September 6, it copied a text file of the User Log on Defendant's computer containing "metadata," information that contains details such as file size and individual

---

[10]Id.

[11]Compl. ¶ 12.

[12]Id. ¶ 14.

[13]Id. ¶ 13.

[14]Id. ¶ 14.

[15]Pls.' Mem. of Law in Supp. of their Mot. for Summ. J. [Doc. No. 19] ¶ 1.

[16]Id. ¶ 1, 5.

[17]Id. ¶ 6, 7.

user comments.[18]   MediaSentry ascertained that America Online ("AOL") had assigned that particular IP address.[19]

When Plaintiffs learned of the possible infringement from MediaSentry, they filed a "Doe" lawsuit to identify the subscriber assigned to the IP address 172.144.76.52 and to confirm that the subscriber maintained an active Internet account for the time period at issue.[20]   The subscriber was identified as Richard Alburger, who thereafter notified the plaintiffs that, in fact, it was his son, Defendant Joseph Alburger, who was responsible for the KaZaA use and alleged digital piracy.[21]

Although Defendant in his Answer denies many of the charges in Plaintiffs' Complaint, substantial evidence was produced through discovery and answers to requests for admission, in which Defendant admits to having downloaded and used KaZaA on the computer located in the family home.[22]   He claims that no friend or family member used the KaZaA program on that particular computer; he was the only one.[23]   His username on the KaZaA network was "TEMPTME@KaZaA," and he used the KaZaA software for the primary purpose of downloading

---

[18] Id. ¶ 16.

[19] Id. ¶ 2.

[20] Id. ¶ 8, 9.

[21] Id. at 3.  Plaintiffs filed an action against Richard Alburger on October 10, 2006, accusing him of violating their copyright in the Recordings.  As a result of that suit, Plaintiffs learned from Richard Alburger that the infringing user was his son, Joseph Alburger.  On August 3, 2007, Plaintiffs voluntarily dismissed the case against Richard Alburger, and brought the current action against Defendant on September 6, 2007.

[22] Dep. Tr. of Def. at 74:1-3 [Pls' Mem. of Law in Supp. of their Mot. for Summ. J. Ex. 8].

[23] Id. at 95:1-4.

music.[24]  The twenty-five (25) Recordings owned or licensed by Plaintiffs were among the audio files downloaded by Defendant, and they ended up in Defendant's "shared" folder.[25]  These same files could be downloaded and viewed by other KaZaA network users.  The metadata collected by MediaSentry contained user comments attached to some of the audio files; however, Defendant states that he does not know how to add comments.[26]

Plaintiffs pray for damages equal to the minimum statutory amount of $750 per song pursuant to 17 U.S.C. § 504(c) for the willful and intentional violation of their copyright.[27]  They ask for $420 in fees and costs pursuant to 17 U.S.C. § 505.[28]  Additionally, Plaintiffs request injunctive relief under 17 U.S.C. §§ 502 and 503 to prohibit Defendant's future infringement of their copyrights and to order Defendant to destroy all existing illegal copies of Plaintiffs' sound recordings.[29]

## II.  STANDARD FOR SUMMARY JUDGMENT

Disposition upon motion for summary judgment is appropriate if the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[30]  A court can consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in making its

---

[24]Id. at 69:9-16, 74:4-8.

[25]Id. at 109:8-111:4, 113:13-114:5

[26]Id. at 71:18-72:16

[27]Pls.' Mem. of Law in Supp. of their Mot. for Summ. J. [Doc. No. 19] at 1, ¶ 23.

[28]Id.

[29]Id. ¶ 19.

[30] FED. R. CIV. P. 56(c).

determination.[31]  "If . . . there are no genuine issues as to any material fact, the Court may enter a final disposition by applying the relevant law to the undisputed facts.[32]  A court must consider the facts in a light most favorable to the nonmoving party.[33]  If no reasonable trier of fact could find for the nonmoving party, the court must grant the summary judgment motion.[34]

As of the date of this filing, Defendant has failed to respond to Plaintiffs' instant Motion.[35]  In the Third Circuit, courts agree that a lack of response from the nonmoving party alone is not sufficient to award the moving party summary judgment, nor is it alone a sufficient reason to deny a summary judgment motion.[36]  Federal Rule of Civil Procedure 56(e)(2) reads, "[i]f the opposing party does not . . . respond, summary judgment should, if appropriate, be entered against that party."  Therefore, this Court shall consider the merits of Plaintiffs' claims, to ascertain, considering the facts before it, whether a reasonable trier of fact could decide for Defendant.

---

[31] Id.

[32] See generally FED. R. CIV. P. 56(c).

[33] See Pollock v. American Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986).

[34] See Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986).

[35] Plaintiffs filed the present Motion for Summary Judgment, accompanied by a Certificate of Service, on March 30, 2009, within the time period for dispositive motions allotted by this Court's Order.  Under the Court's rules, Defendant had fourteen (14) days after receipt of the Motion to respond.  Local Civil Rule 7.1(c) directs the Court to follow Federal Rule of Civil Procedure 56(c) when there has been no timely response to a summary judgment motion.  FED. R. CIV. P. 56(c) (2009); E.D. PA. CIV. R. P. 7.1(c) (2007); see also Santana v. City of Philadelphia, 2008 U.S. Dist. LEXIS 53229 (E.D.Pa. July 11, 2008).  Rule 56(c) gives this Court authority to render judgment, regardless of whether the nonmoving party has responded to the motion, as long as the evidence shows that "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  In sum, this Court reviews all summary judgment motions, contested or uncontested, by the same standard.  See Fakete v. Aetna, Inc., 152 F. Supp. 2d 722, 729 (E.D. Pa. 2001).

[36] See Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991) (stating that there must be a "merits analysis" and that a motion cannot be granted simply because it is unopposed).

## III.  DISCUSSION

The Copyright Act of 1976, codified in 17 U.S.C. § 101 et al.,  outlines the exclusive rights possessed by a copyright holder.  To prevail on their claim, Plaintiffs must establish that they own a valid copyright in the Recordings and that Defendant engaged in unauthorized copying of original elements of those Recordings.[37]  Plaintiffs specifically charge that Defendant infringed upon the rights identified in § 106(1) and (3), the rights of reproduction and distribution.  Subsection (1) recites the copyright owner or licensee's exclusive right "to reproduce the copyrighted work in copies or phonorecords"[38] and (3) describes the right "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease or lending."[39]

District courts in the Third Circuit (and elsewhere) agree, in the absence of clear precedent from the Supreme Court or the Circuit court, that downloading music from the internet, without paying for it or acquiring any rights to it, is a direct violation of the Copyright Act.[40]  Additionally, sources indicate that an individual violates the exclusive-distribution right by "making available" that illegally downloaded work to other internet users.[41]   This prohibition extends to uploading one's own CDs, (a process in which the audio files are compressed into MP3 format,

---

[37] See Dun & Bradstreet Software Servs. v. Grace Consulting, Inc., 307 F.3d 197, 206 (3d Cir. 2002).

[38] 17 U.S.C. § 106(1) (2002).

[39] Id. § 106(3).

[40] See, e.g., Arista Records, LLC v. Callie, 2007 U.S. Dist. LEXIS 43563, at *3-4 (D.N.J. June 15, 2007); Fonovisa, Inc. v. Merino, 2006 U.S. Dist. LEXIS 89212 (D.N.J. Nov. 27, 2006).

[41] See Motown Record Co. v. DePietro, 2007 U.S. Dist. LEXIS 11626, at *12-13 n.38 (E.D. Pa. Feb. 16, 2007).  There is no requirement that plaintiffs show that the files were actually downloaded by other users from Defendant, only that the files were *available* for downloading.  See generally id.

making them easier to transmit) and making them available to others online without the permission of the copyright holder.[42]   Defendants in these cases cannot succeed by claiming that the infringement was innocent: copyright infringement is generally not excused by innocent intent.[43] "Once a plaintiff has proven that he or she owns the copyright on a particular work, and that defendant has infringed upon those 'exclusive rights,' the defendant is liable for the infringement and this liability is absolute."[44]

The facts in this case are essentially undisputed.   Defendant admits that he downloaded and used KaZaA for the purpose of acquiring music at the time in the Complaint.  He does not assert that he is not the individual identified with the particular computer, IP address, and KaZaA account linked to the infringement.  He contends that he was unaware that the Recordings did not come from the KaZaA software itself, but he acknowledges the Recordings were among the songs downloaded.   Thus, the violation of Plaintiffs' right of reproduction is satisfied by the Defendant's admissions.   Also, the accused recognized the "shared" folder in his deposition, providing evidence that the audio files at issue were distributed (available) to other KaZaA users. It is not disputed that KaZaA is a P2P network that allows such distribution, uploading and downloading of copyrighted works, by Internet users.  Defendant was one such user, and the facts available to this Court show that his use violated Plaintiffs' exclusive right of distribution.

Plaintiffs submitted certificates of registration for each of the twenty-five (25) sound

---

[42] See A&M Records v. Napster Inc., 239 F.3d 1004, 1011 (9th Cir. 2001) (describing in detail the P2P file sharing process and CD "ripping" in particular).

[43] See Williams Electronics, Inc. v. Arctic International, Inc., 685 F.2d 870, 878 (3d Cir. 1982) (referencing NIMMER ON COPYRIGHT § 13.08 (1981)).

[44] See Pinkham v. Sara Lee Corp., 983 F.2d 824, 829 (8th Cir. 1992).

recordings, and Defendant has not put forth any evidence to challenge the validity of those registrations now or at the time of the alleged infringement.  Under 17 U.S.C. § 410(c), a certificate of registration is prima facie evidence of a valid copyright.[45]  In short, Plaintiffs provided adequate evidence of their registered copyright in the Recordings, and Defendant admits to all the facts related to his conduct that Plaintiffs would have to show to succeed on their claim.  Therefore, there is no dispute of material facts and summary judgment is appropriate.

## IV.  DAMAGES

Plaintiffs elect to collect statutory damages pursuant to 17 U.S.C. § 504(c).[46]  No evidence of actual damages needs to be shown in order for a plaintiff to collect a statutory award.[47]  Courts in this district and in many others routinely award statutory damages in these types of copyright infringement cases.[48]  The permissible range of damages per violation (per sound recording in this matter) is $750 to 30,000,[49] and Plaintiffs choose the minimum amount.  At $750 per song, and twenty-five (25) sound recordings in this case, the statutory damages award charged to Defendant is $18,750.  Plaintiffs also request the costs of the suit in this matter as permitted by 17 U.S.C. § 505, a matter which is ultimately at the Court's discretion.[50]  The Third Circuit does not

---

[45] 17 U.S.C. § 410(c) (1976).

[46] 17 U.S.C. § 504(c) (2004); see also Fitzgerald Pub. Co. v. Baylor Pub. Co., 807 F.2d 1110, 1114 (2d Cir. 1986).

[47] See Axact (PVT), Ltd. v. Student Network Res., Inc., 2008 U.S. Dist. LEXIS 86455, at *6 (D.N.J. Oct. 20, 2008).

[48] See e.g., Frank Music Corp. v. Emerson's Pub, Inc., 2009 U.S. Dist. LEXIS 22594, at *4 (M.D. Pa. Mar. 18, 2009).

[49] 17 U.S.C. § 504(c) (2004).

[50] 17 U.S.C. § 505 (1976).

-10-

require bad faith for such an award, but neither is the award automatic for all successful parties.[51] Plaintiffs ask for only $420 in costs and fees, and they do not attempt to recover attorneys' fees from Defendant.  The Court finds costs to be appropriate at this time to act as further deterrence for copyright violators.

Finally, Plaintiffs ask the Court for permanent injunctive relief to prevent Defendant from further violating their exclusive rights to the Recordings and any other copyrighted works to which they possess exclusive rights.  The relevant code provision is 17 U.S.C. § 502(a), and it states in part that a court may, "grant . . . final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."[52]  In copyright cases, injunctive relief is regularly provided to prevailing plaintiffs due to the ease of further violation and the insufficiency of legal remedies.[53]  Although Defendant claims to have ceased downloading and sharing files on KaZaA since the emergence of this suit, an injunction will ensure that he not be so inclined to resume his prior illegal activities.  Defendant has not presented any reason why a permanent injunction would be inappropriate at this juncture, and thus the Court finds that it is prudent.

An appropriate Order follows.

---

[51]Lieb v. Topstone Indus., 788 F.2d 151, 155-56 (3d Cir. 1986).

[52]17 U.S.C. § 502(a) (1976).

[53]See Fonovisa, supra note 40, at *8-9.